IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CT-3171-FL

| | |
|---|---|
| MICHAEL ANTONIO ROBINSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PAULA SMITH, CHANSON A. )<br>DEVAUL, TERRI CATLETT, and )<br>KAREN STEINHOUR, )<br>)<br>Defendants.[1] ) | ORDER |

This matter is before the court on defendants' motions for summary judgment (DE 90, 97), and to seal (DE 95). The motions for summary judgment were fully briefed and in this posture the issues raised are ripe for ruling. For the following reasons, the court grants the motions.

**STATEMENT OF THE CASE**

Plaintiff, a state inmate proceeding pro se, commenced this action on June 29, 2017, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. In the operative complaint, plaintiff alleges defendants Paula Smith ("Smith"), Chanson A. DeVaul ("DeVaul"), Terri Catlett ("Catlett"), and Karen Steinhour ("Steinhour"), violated his rights under the Eighth Amendment to the United States Constitution by failing to provide medical treatment for his Hepatitis C.[2]

---

[1] The court constructively amends the caption of this order to reflect dismissal of formerly named defendants The Utilization Department, Robert E. Chambell, James D. Foster, Mae B. Melendon, and Matthew Roose, Jr. by separate orders entered April 6, 2018, and July 6, 2018.

[2] Shortly after filing the complaint, plaintiff filed numerous motions to appoint counsel and amend the complaint. On January 30, 2018, the court denied plaintiff's motions to appoint counsel, granted the motions to

Following a period of discovery, on December 5, 2019, defendant DeVaul filed the instant motions for summary judgment and to seal medical and other confidential records filed in support of the motion for summary judgment. In support of the motion for summary judgment, defendant DeVaul relies upon memorandum of law, statement of material facts, and appendix of exhibits thereto, comprising the following: 1) affidavit of defendant DeVaul; 2) plaintiff's offender movement log; 3) North Carolina Department of Public Safety ("NCDPS") Health Services Clinical Practice Guidelines, Policy # CP-7, Subject: Hepatitis C (June 2013 version); 4) plaintiff's medical records, including lab and diagnostic reports, provider notes, medical and dietary orders, sick call appointment requests, health care refusal forms, utilization review summaries, and similar records; 5) NCDPS Health Services Clinical Practice Guidelines, Policy # CP-7, Subject: Hepatitis C (October 2015 version); and 6) plaintiff's administrative grievance records. That same day, the court provided plaintiff notice of the motion, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), which included the deadline to respond, instructions for responding to the motion, and warned plaintiff about the consequences of failing to respond.

On December 5, 2019, defendants Smith, Steinhour, and Catlett (together, "administrator defendants") also filed their motion for summary judgment. In support, the administrator defendants rely upon memorandum of law, statement of material facts, and appendix of exhibits thereto, comprising the following: 1) affidavit of defendant Catlett; 2) affidavit of defendant Steinhour; 3) affidavit of defendant Smith; 4) NCDPS Health Services Clinical Practice

---

amend, and conducted its frivolity review of the complaint. The court allowed the action to proceed as to defendants Smith and DeVaul, dismissed formerly named defendant the Utilization Department, and directed plaintiff to particularize his complaint by identifying the members of the utilization department that should be named as defendants. Plaintiff subsequently amended the complaint by naming additional defendants Steinhour and Catlett. Upon motion to dismiss, on January 28, 2019, the court dismissed plaintiff's official capacity claims for monetary damages against defendant DeVaul.

Guidelines, Policy # CP-7, Subject: Hepatitis C (first version); 5) NCDPS Health Services Clinical Practice Guidelines, Policy # CP-7, Subject: Hepatitis C (June 2013 version); and 6) NCDPS Health Services Clinical Practice Guidelines, Policy # CP-7, Subject: Hepatitis C (October 2015 version). The court also provided plaintiff Roseboro notice as to the administrator defendants' motion.

On December 13, 2019, plaintiff filed renewed motion to appoint counsel and for extension of time to respond to defendants' motion for summary judgment. On December 23, 2019, the court denied the motion to appoint counsel but granted plaintiff's motion for extension of time. On February 26, 2020, plaintiff responded in opposition to defendants' motions for summary judgment.[3]

## STATEMENT OF THE FACTS

The undisputed facts may be summarized as follows.[4] Plaintiff was an inmate in NCDPS custody, housed at the Nash Correctional Institution ("Nash C.I."), during the relevant time period. (DeVaul Aff. (DE 93-1) ¶ 4). Defendant DeVaul was a physician employed by NCDPS who treated plaintiff between July 16, 2014 and February 2017, when defendant DeVaul left his employment with NCDPS. (Id. ¶¶ 2, 4). Defendant Smith was the medical director for the NCDPS Division of Adult Correction and Juvenile Justice from 2001 until December 2017. (Smith Aff. (DE 99-3) ¶ 4). As medical director, she was responsible for overseeing medical services for all 37,000 inmates incarcerated within the NCDPS system, which included developing

---

[3] Plaintiff filed duplicate copies of his responses on June 22, 2020.

[4] Plaintiff did not file verified evidence or similar competent summary judgment evidence in response to defendants' motions, and the complaint is not verified. The court therefore draws the factual background from defendants' undisputed submissions.

3

clinical practice guidelines for treating Hepatitis C. (Id. ¶¶ 5, 7, 10-12). Defendant Catlett is the NCDPS Director of Healthcare Administration. (Catlett Aff. (DE 99-1) ¶¶ 2-5). In her administrative role, defendant Catlett is not responsible for direct provision of medical care to individual patients or development of the NCDPS clinical practice guidelines related to Hepatitis C. (Id. ¶¶ 5-10, 18). Defendant Steinhour is the NCDPS Director of Quality Assurance. (Steinhour Aff. (DE 99-2) ¶ 2). She also is not responsible for direct medical care or development of the NCDPS clinical practice guidelines related to Hepatitis C. (Id. ¶¶ 5, 7-8, 18).

Plaintiff has been diagnosed with Hepatitis C, a chronic viral infection of the liver. (DeVaul Aff. (DE 93-1) ¶ 6). The disease causes significant liver damage in approximately 20 percent of patients, including cirrhosis of the liver and possible liver cancer. (Id.; Smith Aff. Ex. C (DE 99-6) at 1).[5] The disease progresses slowly. For the subset patients who develop severe complications, the disease typically does not cause cirrhosis for at least 20 years. (DeVaul Aff. (DE 93-1) ¶ 6). Thus, if liver function tests indicate no significant abnormalities or evidence that the disease is progressing, immediate treatment is unnecessary. (Id.).

Hepatitis C is treated by administration of therapeutics known as antivirals. (See id.). Initially, the available antiviral treatments were only effective for approximately 30 to 50 percent of patients. (Id.). The original treatment regimen also produced frequent and at times serious side effects. (Id.). Recently, however, a new antiviral drug known as Harvoni became available, which is more effective than previous therapies.[6] (Id.).

---

[5] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

[6] The record does not indicate the precise date Harvoni became available. As discussed further below, plaintiff requested the medication in September 2016. (DeVaul Aff. (DE 93-1) ¶ 52).

4

NCDPS produced two clinical practice guidelines relevant to treatment of inmates with Hepatitis C during the time period at issue in this case: the June 2013 and October 2015 versions of the policy known as "NCDPS Health Services Clinical Practice Guidelines, Policy # CP-7, Subject: Hepatitis C" ("2013 Clinical Practice Guidelines" or "2015 Clinical Practice Guidelines"). Defendant Smith was personally involved in the creation and implementation of both versions of the policy. (Smith Aff. (DE 99-3) ¶¶ 18, 21). In developing the policy, defendant Smith "reviewed and consulted many sources of information, including but not limited to guidelines from the American Association for the Study of Liver Diseases, medical journal articles, peer-review studies, policy and procedure manuals from other correctional settings, and many more." (Id. ¶¶ 22, 24). She also conferred with outside experts in liver disease treatment and evaluation. (Id. ¶ 24).

The 2013 Clinical Practice Guidelines adopted a stepwise approach to detection and treatment of Hepatitis C modeled on guidelines implemented by the Federal Bureau of Prisons. (DeVaul Aff. (DE 93-1) ¶ 8). In order to obtain antiviral treatment under the 2013 guidelines, the inmate must have acceptable laboratory tests, no medical contraindications for the therapy, and none of the following: 1) severe uncontrolled psychiatric disease; 2) history of solid organ transplant; 3) certain autoimmune disorders; 4) uncontrolled endocrine disorders; 5) serious concurrent medical diseases such as severe hypertension, heart failure, coronary heart disease, or chronic obstructive pulmonary disease; 6) decompensated cirrhosis; 7) platelet count abnormalities; 8) documented nonadherence to prior therapy; 8) less than 12 months remaining on the inmate's sentence[7]; 9) other unstable medical or mental health conditions that preclude antiviral

---

[7] This was an exclusion criterion because 12 months was necessary to complete assessment and treatment protocols. (Smith Aff. Ex. B (DE 99-5) at 4)

5

therapy; and 10) inmate life expectancy of less than 10 years due to co-morbid conditions. (Smith Aff. Ex. B (DE 99-5) at 3-5). If an inmate met the foregoing clinical criteria and his primary care provider otherwise determined he was an appropriate candidate for antiviral treatment, the provider submitted a utilization review request seeking approval for antiviral therapy. (Id. at 6; see also DeVaul Aff. (DE 93-1) ¶ 8). In the event the utilization reviewer approved the request, referral was made to the Hepatology clinic for further evaluation and potential treatment. (Smith Aff. Ex. B (DE 99-5) at 6; see also DeVaul Aff. (DE 93-1) ¶ 8).

In October 2015, NCDPS revised its clinical practice guidelines regarding Hepatitis C. (Smith Aff. (DE 99-3) ¶ 19). Like the 2013 version, the 2015 Clinical Practice Guidelines adopted the approach used by the Federal Bureau of Prisons at the time for detection and treatment of Hepatitis C. (DeVaul Aff. (DE 93-1) ¶ 30). Under the 2015 guidelines, treatment was "contraindicated" for inmates whose remaining period of incarcerated is "an insufficient period of time to complete treatment" which generally was defined as less than 12 months. (Smith Aff. Ex. C (DE 99-6) at 5). Treatment also was contraindicated if the inmate had an unstable medical or mental health condition that precluded antiviral therapy, a life expectancy of less than 10 years due to co-morbid conditions, or disciplinary infractions related to the use of alcohol or drugs in the last 12 months. (Id.). The policy further provided that treatment was "prioritized" based on level of fibrosis, advanced liver disease, and those with highest risk which includes inmates with HIV or HBV. (Id. at 6). In order to determine which inmates were "prioritized," the policy required medical providers to obtain the inmate's "FibroSure score," which is a measure of liver damage. (Id. at 6-7; DeVaul Aff. (DE 93-1) ¶ 30 & n.15). Inmates with a FibroSure score greater than .48 ("Stage F2") were referred for treatment, while inmates with a FibroSure score

6

less than .48 were monitored annually for progression to Stage F2 (at which time they would be referred for antiviral treatment). (Smith Aff. Ex. C (DE 99-6) at 7; DeVaul Aff. (DE 93-1) ¶ 30 & n.15). If an inmate met the foregoing clinical criteria and his primary care provider determined he was an appropriate candidate for antiviral treatment, the provider submitted a utilization review request for treatment. (Smith Aff. Ex. C (DE 99-6) at 7; DeVaul Aff. (DE 93-1) ¶ 30). In the event the utilization reviewer approved the request, referral was made to the Hepatology clinic for further evaluation and potential treatment. (Smith Aff. Ex. C (DE 99-6) at 7; DeVaul Aff. (DE 93-1) ¶ 30).

Plaintiff alleges defendants were deliberately indifferent to his Hepatitis C between July 16, 2014, and May 5, 2017. On March 26, 2014, defendant DeVaul personally examined plaintiff and discussed his request for Hepatitis C treatment. (DeVaul Aff. (DE 93-1) ¶¶ 10, 65). Defendant DeVaul determined that plaintiff's liver function tests were normal or only slightly elevated, and that a recent abdominal ultrasound showed no abnormality or pathology of the liver. (Id. ¶ 10). Physical examination also revealed no indication of liver dysfunction. (Id.). Furthermore, another physician within the Hepatology Department had recently examined plaintiff, conducted laboratory tests, and determined that treatment for Hepatitis C was not indicated at that time. (Id.). Consistent with the 2013 Clinical Practice Guidelines, defendant DeVaul recommended that plaintiff delay treatment and submit to regular monitoring of his liver function. (Id.).

Plaintiff submitted several sick call requests in June 2014, again requesting treatment for Hepatitis C. (Id. ¶ 10; DeVaul Aff. Ex. 4 (DE 94-10) at 15-23). In response to these requests, plaintiff was scheduled for an appointment with defendant DeVaul on July 16, 2014. (DeVaul

7

Aff. (DE 93-1) ¶ 11). Defendant DeVaul again examined plaintiff and reviewed his laboratory results, which were "excellent." (Id.; DeVaul Aff. Exs. 3 & 5 (DE 94-3, 94-5)). Additionally, defendant DeVaul determined plaintiff did not meet criteria for referral to the Hepatology clinic due to a potential unstable psychiatric issue. (DeVaul Aff. (DE 93-1) ¶ 11). Defendant DeVaul again determined that the appropriate course of treatment, as reflected in the 2013 Clinical Practice Guidelines, was to continue monitoring plaintiff's laboratory results for progression of his disease, and informed plaintiff of same. (Id.).

On September 26, 2014, defendant DeVaul conducted review of plaintiff's chart to review the results of his recent hepatic function panel. (Id. ¶ 13; DeVaul Aff. Ex. 7 (DE 94-7)). He determined all values were within normal limits and that further medical intervention was unnecessary at that time. (DeVaul Aff. (DE 93-1) ¶ 13).

Defendant DeVaul conducted another chart review on April 10, 2015, which also revealed that plaintiff's hepatic function tests were normal. (DeVaul Aff. (DE 93-1) ¶ 18; DeVaul Aff. Ex. 11 (DE 94-11)). Based on that review, defendant DeVaul again determined plaintiff's Hepatitis C did not require treatment. (DeVaul Aff. (DE 93-1) ¶ 18).

That same day, plaintiff submitted a mental health referral form requesting information about why he had not received treatment for his Hepatitis C. (Id. ¶ 18; see also DeVaul Aff. Ex. 11 (DE 94-11) at 3). Plaintiff indicated that another Nash C.I. physician had told him on an unidentified date to wait a year for treatment with a new medication that had limited side effects. (DeVaul Aff. Ex. 11 (DE 94-11) at 3). Plaintiff asked if the new medication was now available. (Id.). In response, a nursing supervisor informed plaintiff that he would receive an update on his plan of care for Hepatitis C in the near future. (Id. at 4).

Between April 10, 2015 and April 6, 2016, plaintiff did not present to Nash C.I. medical staff and request treatment or updates about his Hepatitis C. (See DeVaul Aff. (DE 93-1) ¶¶ 14-40). Defendant DeVaul, however, continued to monitor plaintiff's laboratory liver function tests, which remained within normal limits. (See, e.g., id. ¶¶ 18, 36). Based on these chart reviews, defendant DeVaul again determined plaintiff's Hepatitis C did not require treatment. (Id.).

On April 6, 2016, plaintiff was seen by a mental health clinician. (Id. ¶ 41; DeVaul Aff. Ex. 31 (DE 94-31) at 2). At that appointment, plaintiff stated that he had been experiencing significant abdominal and groin pain over the past few months and he was concerned the pain was a result of his Hepatitis C. (DeVaul Aff. Ex. 31 (DE 94-31) at 2). Later that same day, plaintiff submitted a sick call request, but he did not seek treatment or further evaluation for Hepatitis C. (DeVaul Aff. (DE 93-1) ¶ 41).

On July 1, 2016, plaintiff submitted a sick call request seeking, inter alia, an appointment at the hepatology clinic. (Id. ¶ 45; DeVaul Aff. Ex. 35 (DE 94-35) at 2). A nurse reviewed plaintiff's chart in response to this request, but there is no indication in the record that medical staff or NCDPS administrators responded to plaintiff's request for a hepatology appointment. (See DeVaul Aff. (DE 93-1) ¶ 45). The nurse that reviewed plaintiff's chart did not inform defendant DeVaul that plaintiff had requested a hepatology appointment. (Id.).

On July 14, 2016, plaintiff met with a mental health clinician, and again complained that he was not receiving medical treatment for his Hepatitis C. (Id. ¶ 46; DeVaul Aff. Ex. 36 (DE 93-1) at 2). Although the clinician indicated she would relay plaintiff's concerns to medical staff, there is no record evidence establishing she did so. (DeVaul Aff. (DE 93-1) ¶ 46 & n.28; DeVaul

9

Aff. Ex. 36 (DE 93-1) at 2).

On July 18, 2016, plaintiff received a response to his June 30, 2016, administrative grievance complaining that he was not receiving treatment for his Hepatitis C. (DeVaul Aff. Ex. 36 (DE 94-36) at 4-5). A correctional official, Gary Stokey, reviewed plaintiff's medical records and noted that on July 16, 2014, plaintiff agreed with defendant DeVaul's recommendation of continued monitoring. (Id. at 5). Stokey conferred with medical staff and informed plaintiff that if he wanted to be considered for Hepatitis C treatment, he must submit a sick call request to be re-evaluated in accordance with current version of the Clinical Practice Guidelines. (Id.).

In early August 2016, consistent with the instructions in the grievance response, plaintiff submitted two sick call requests complaining of lower abdominal pain which he believed was caused by his Hepatitis C. (DeVaul Aff. (DE 93-1) ¶ 49; DeVaul Aff. Ex. 38 (DE 94-38) at 2, 4). Plaintiff thus requested that medical staff evaluate his liver. (DeVaul Aff. Ex. 38 (DE 94-38) at 2, 4). Plaintiff was seen by a nurse in response to these appointment requests on August 17, 2016, who prescribed medications for plaintiff's gastric distress but did not refer plaintiff for evaluation or treatment of Hepatitis C. (DeVaul Aff. (DE 93-1) ¶ 49). The medical record from the appointment did not indicate that plaintiff specifically requested treatment for his Hepatitis C during the appointment. (See id.; DeVaul Aff. Ex. 38 (DE 94-38) at 7-10).

In late August 2016, plaintiff submitted sick call requests complaining of swelling and nerve damage that he believed was caused by his Hepatitis C. (DeVaul Aff. (DE 93-1) ¶ 51; DeVaul Aff. Ex. 38 (DE 94-40) at 1-6). In response, plaintiff was scheduled for an appointment on September 14, 2016. (DeVaul Aff. (DE 93-1) ¶ 51). Plaintiff, however, refused to attend the appointment at the scheduled time because he "did not agree" with being charged for a medical

appointment. (DeVaul Aff. Ex. 40 (DE 94-40) at 7-8).

On September 15, 2016, plaintiff received a response to his September 1, 2016, administrative grievance complaining that medical staff were refusing to provide treatment for his Hepatitis C. (DeVaul Aff. Ex. 40 (DE 94-40) at 9-10). Plaintiff's grievance also specifically requested treatment with Harvoni, the new antiviral treatment for Hepatitis C. (Id. at 9). In response, a correctional officer reported that plaintiff was scheduled to "see the provider for a work-up and evaluation to see if [plaintiff met the criteria under the 2015 Clinical Practice Guidelines]." (Id. at 10).

On November 21, 2016, plaintiff was seen by a mental health clinician, where he again complained that he was not receiving treatment for his Hepatitis C. (DeVaul Aff. (DE 93-1) ¶ 54; DeVaul Aff. Ex. 42 (DE 94-42) at 2). The clinician noted that plaintiff had not submitted a sick call request to address the concerns, and that he "appears to have basically given upon on receiving medical treatment for his conditions." (DeVaul Aff. (DE 93-1) ¶ 54; DeVaul Aff. Ex. 42 (DE 94-42) at 2). Seven days later, on November 28, 2016, plaintiff was seen by a nurse in response to various sick call requests, and he did not request evaluation or treatment for Hepatitis C at that time. (DeVaul Aff. (DE 93-1) ¶ 55; DeVaul Aff. Ex. 43 (DE 94-43) at 7-10). Plaintiff was then seen by a nurse practitioner on January 5, 2017, for further evaluation of unrelated medical issues, and he again did not request evaluation or treatment for Hepatitis C. (DeVaul Aff. (DE 93-1) ¶ 57; DeVaul Aff. Ex. 43 (DE 94-45) at 1-5).

As noted above, defendant DeVaul left his position with NCDPS in February 2017. (DeVaul Aff. (DE 93-1) ¶ 2). Plaintiff has not submitted competent evidence suggesting he requested treatment for his Hepatitis C between November 21, 2016 (the last date plaintiff

11

complained specifically about his Hepatitis C to NCDPS staff), and June 29, 2017, when plaintiff filed the instant action. Defendants Smith, Catlett, and Steinhour testified that they were not involved in any specific treatment decisions regarding plaintiff's Hepatitis C. (Smith Aff. (DE 99-3) ¶¶ 27-31; Catlett Aff. (DE 99-1) ¶¶ 10-17; Steinhour Aff. (DE 99-2) ¶¶ 10-17).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial,

"evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B. Analysis

As noted, plaintiff alleges defendants violated his rights under the Eighth Amendment to the United States Constitution by failing treat his Hepatitis C. The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (1996). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted). The first prong is

13

objective – the prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (internal quotation omitted). In the medical context, a basic human need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The second prong is subjective – the prisoner must show that "subjectively the officials acted with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (internal quotations omitted). The mental state for "deliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); see Farmer, 511 U.S. at 837. A plaintiff therefore must establish the prison official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Farmer, 511 U.S. at 837–39). The subjective knowledge requirement can be proved "through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge . . . ." Scinto v. Stansberry, 841 F.3d 219, 225-26 (4th Cir. 2016).

Deliberate indifference is thus "a particularly high bar to recovery." Iko, 535 F.3d at 241. For claims involving medical care, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are

14

alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Negligence or medical malpractice in diagnosis or treatment are not exceptional circumstances. See id.; see also Estelle v. Gamble, 429 U.S. 97, 105-08 (1976).

Here, defendants do not dispute that Hepatis C is a serious medical issue. See also Gordon v. Schilling, 937 F.3d 348, 356-57 (4th Cir. 2019). Accordingly, the court's analysis focuses on the subjective component of plaintiff's Eighth Amendment claim.

The undisputed record evidence shows defendant DeVaul evaluated plaintiff for Hepatitis C treatment on numerous occasions and determined, based on his professional judgment, that plaintiff should not be treated for Hepatitis C. Plaintiff's first relevant evaluation with defendant DeVaul was on March 24, 2014. (DeVaul Aff. (DE 93-1) ¶ 10). Because plaintiff's liver function tests were normal, and a Hepatitis C specialist recently determined plaintiff should not begin treatment, defendant DeVaul concluded that the best approach was to continue monitoring plaintiff's liver condition for signs of fibrosis, but delay treatment with antiviral medications. (See id. ¶ 10). This decision was based in part on the fact that the available treatment was at most 50 percent effective and may cause significant side effects. (See id. ¶¶ 6, 10). Defendant DeVaul reach the same conclusion after evaluating plaintiff in July 2014, where plaintiff's liver function tests remained "excellent" and treatment with antivirals was contraindicated due to plaintiff's mental health issues. (Id. ¶ 11). Defendant DeVaul also reviewed plaintiff's liver function tests in September 2014, April 2015, and December 2015, which also showed plaintiff's liver function was normal. (Id. ¶¶ 13, 18, 36). Based on those reviews, defendant DeVaul determined plaintiff should not be treated for his Hepatitis C at that time, and continued monitoring for signs of liver damages was appropriate. (Id.). Plaintiff's disagreement with defendant

15

DeVaul's clinical determination, without more, does not establish deliberate indifference to serious medical needs. See Wright, 766 F.2d at 849; see also Jackson, 775 F.3d at 178 (holding mistaken diagnosis or treatment decision does not establish deliberate indifference).

With respect to plaintiff's requests for treatment with Harvoni beginning in July 2016, the record does not demonstrate that medical staff evaluated plaintiff's Hepatitis C to determine whether he qualified for such treatment under the 2015 Clinical Practice Guidelines. For example, on July 1, 2016, plaintiff requested an appointment in the hepatology clinic so that a specialist could evaluate whether treatment with Harvoni may be indicated. (DeVaul Aff. (DE 93-1) ¶ 45; DeVaul Aff. Ex. 35 (DE 94-35) at 2). The record does not establish that medical staff referred plaintiff to the hepatology clinic or otherwise evaluated plaintiff for Hepatitis C treatment under the 2015 protocol. (See DeVaul Aff. (DE 93-1) ¶ 45). Similarly, plaintiff again complained about his Hepatitis C symptoms in August 2016, but plaintiff was not evaluated for treatment with Harvoni at that time. (See id. ¶ 49).[8] Finally, on September 1, 2016, plaintiff submitted administrative grievance specifically alleging that medical staff were refusing to provide treatment for his Hepatitis C and requesting treatment with Harvoni. (DeVaul Aff. Ex. 40 (DE 94-40) at 9-10). In response, a correctional officer reported that plaintiff was scheduled to see a provider for an evaluation regarding his Hepatitis C under the 2015 Clinical Practice Guidelines. (Id.). The record, however, again contains no evidence suggesting such an evaluation occurred. Furthermore, there is no evidence that plaintiff received a FibroSure test to determine whether he

---

[8] Defendant DeVaul emphasizes that plaintiff did not specifically request evaluation for Hepatitis C treatment in August 2016. Plaintiff's complaint instead focused on his abdominal pain. (DeVaul Aff. (DE 93-1) ¶ 49). The court also notes plaintiff complained about his Hepatitis C symptoms in late August 2016, but he then refused to attend the medical appointment scheduled to evaluate his concerns. (DeVaul Aff. Ex. 40 (DE 94-40) at 7-8).

16

should be prioritized for treatment with Harvoni pursuant to the 2015 Clinical Practice Guidelines.[9]

Notably, however, plaintiff submitted numerous sick call requests after he filed the September 1, 2016, grievance, but he did not seek evaluation for Hepatitis C treatment in those requests. (DeVaul Aff. (DE 93-1) ¶¶ 55, 57). And plaintiff has not submitted any verified evidence establishing that he requested evaluation and treatment for Hepatitis C between September 1, 2016 (the date of the administrative grievance), and June 19, 2017, when he filed the instant action.

While these facts suggest potential neglect or delay in evaluating plaintiff for treatment under the 2015 Clinical Practice Guidelines, there is no evidence in the record supporting plaintiff's assertions that defendant DeVaul was deliberately indifferent to plaintiff's medical needs. The undisputed evidence establishes defendant DeVaul was not made aware of plaintiff's complaints regarding evaluation or treatment for Hepatitis C under the 2015 Clinical Practice Guidelines. (See, e.g., DeVaul Aff. (DE 93-1) ¶ 45 (noting nursing staff did not inform defendant DeVaul that plaintiff was requesting appointment with hepatology clinic); see also id. ¶¶ 46 & n.28, 49, 51, 65); see also Gordon, 937 F.3d at 358 (holding defendant was personally involved in denying care where "the record reflects that [defendant] reviewed and denied many grievance appeals submitted by [plaintiff] that requested [Hepatitis C] treatment"). Indeed, although defendant DeVaul treated plaintiff for his Hepatitis C through December 2015,[10] the record reflects that different medical providers were responsible for addressing plaintiff's requests for

---

[9]  As noted above, defendant DeVaul left his employment with NCDPS in February 2017, and his submissions are limited to the relevant time period alleged in plaintiff's complaint.

[10] As noted above, the 2015 Clinical Practice Guidelines related to the new Harvoni treatment took effect in October 2015, approximately two months before defendant DeVaul evaluated plaintiff's laboratory results for the last time in December 2015.

17

Harvoni beginning in July 2016. (See, e.g., DeVaul Aff. (DE 93-1) ¶¶ 10, 65; DeVaul Aff. Ex. 11 (DE 94-11) (discussing treatment by a provider named "Dr. Umesi")). Accordingly, plaintiff has not established a triable issue of fact with respect to his claim that defendant DeVaul specifically was deliberately indifferent to his Hepatitis C. See, e.g., Farmer, 511 U.S. at 837; see also Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable [in a § 1983 action], a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").[11]

But even assuming that defendant DeVaul was responsible for evaluating whether plaintiff qualified for treatment with Harvoni under the 2015 Clinical Practice Guidelines, plaintiff's claim at most alleges delayed medical care where defendant DeVaul left his employment with NCDPS in February 2017.[12] For claims premised on delayed medical care, "there is no [constitutional] violation unless the delay results in some substantial harm to the patient, such as a marked exacerbation of the prisoner's medical condition or frequent complaints of severe pain." Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018) (quotation omitted); Webb v. Hamidullah, 281 F. App'x 159, 166-67 (4th Cir. 2008). Here, plaintiff fails to submit verified evidence that the

---

[11] Deliberate indifference also can be established if "a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it . . ." Farmer, 511 U.S. at 842; see also Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004). Plaintiff's condition was well documented in the medical records. However, as discussed above, plaintiff's complaints regarding his inability to obtain Harvoni were directed to different medical providers. Defendant DeVaul may rely those medical professionals completing the necessary evaluations, particularly in the absence of verified evidence that defendant DeVaul was supervising those treatment providers or was ultimately responsible for plaintiff's Hepatitis C throughout plaintiff's incarceration. See Iko, 535 F.3d at 242.

[12] Defendant DeVaul therefore was not responsible for plaintiff's inability to obtain Harvoni after February 2017. See Iqbal, 556 U.S. at 676.

18

alleged delayed medical care caused his condition to deteriorate.[13]  Cf. Gordon, 937 F.3d at 359 (reversing summary judgment ruling in a similar case where plaintiff submitted competent summary judgment evidence that he "could be suffering from ongoing liver damage" even if his liver enzyme tests were within normal limits).  Although plaintiff occasionally complained of pain associated with his Hepatis C, the record reflects that medical staff provided treatment for his pain.  (See, e.g., DeVaul Aff. (DE 93-1) ¶ 49).  And on one occasion, plaintiff complained of pain caused by his Hepatitis C but refused to attend a medical appointment scheduled to evaluate his symptoms.  (Id. ¶ 51).  Accordingly, plaintiff has not established an Eighth Amendment claim premised on delayed medical care against defendant DeVaul.  See Formica, 739 F. App'x at 755; Webb, 281 F. App'x at 166-67.

Finally, the court turns to plaintiff's claims against the administrator defendants.  The record establishes that these defendants were not involved in plaintiff's direct medical care, referrals for Hepatitis C treatment, or his inability to obtain Harvoni.  (See Smith Aff. (DE 99-3) ¶¶ 27-31; Catlett Aff. (DE 99-1) ¶¶ 10-17; Steinhour Aff. (DE 99-2) ¶¶ 10-17).  Although defendant Smith participated in development of the 2015 Clinical Practice Guidelines, as set forth above plaintiff did not receive an evaluation under the revised guidelines.  Had such evaluation occurred, plaintiff may have qualified for Harvoni pursuant to the 2015 protocol.  Accordingly, defendant Smith was not responsible for the alleged failure to treat plaintiff's Hepatitis C.

In summary, plaintiff has failed to establish a triable issue of fact with respect to his claim that defendants were deliberately indifferent to his Hepatitis C.  Defendants are therefore entitled

---

[13]  As noted, according to the undisputed evidence in this case, Hepatitis C does not cause severe liver damage for the majority of patients, and of those that develop complications, progression to cirrhosis takes place over a period of at least 20 years.  (DeVaul Aff. (DE 93-1) ¶ 6).

19

to judgment as a matter of law as to plaintiff's Eighth Amendment claims.

C.  Motion to Seal

Defendant DeVaul moves to seal multiple filings in support of his motion for summary judgment that contain highly personal, medical information concerning plaintiff. Plaintiff does not object to sealing these records. The public has received adequate notice of the motion to seal. Regarding the documents defendant DeVaul seeks to seal in their entirety, no less drastic alternative to sealing is available because the private information appears throughout the filings sought to be sealed. Plaintiff's interest in preserving the confidentiality of his private health conditions outweighs any public interest in disclosure. Accordingly, the court grants the motion to seal.

## CONCLUSION

Based on the foregoing, defendants' motions for summary judgment (DE 90, 97) and to seal (DE 95) are GRANTED. The clerk is DIRECTED to close this case, and to maintain docket entry 94 under seal.

SO ORDERED, this the 30th day of September, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge

20

Case 5:17-ct-03171-FL   Document 116   Filed 09/30/20   Page 20 of 20